Order, Supreme Court, New York County (Charles E. Ramos, J.), entered November 14, 2012, which granted defendants’ motion to dismiss the complaint, unanimously reversed, on the law, without costs, and the motion denied.
The issue here is whether the allegations in the complaint, when viewed in the light most favorable to plaintiffs, state a cause of action for breach of contract (see Arnav Indus., Inc. Retirement Trust v Brown, Raysman, Millstein, Felder & Steiner, 96 NY2d 300, 303 [2001]). We find that a claim is stated.
This lawsuit arises from the sale by defendant EDO Corporation of the stock of EDO’s subsidiary, nonparty CAS, Inc., to plaintiff Wyle Services Corporation. The complaint alleges the following: CAS contracts with federal agencies to provide engineering, scientific, and technical services. Most of the company’s revenue is derived from work it bills pursuant to a negotiated service contract with the General Service Administration (GSA), which sets forth a “Professional Engineering Services” (PES) schedule listing the specific rates that CAS can charge agencies for various work.
In early 2010, defendants put CAS up for sale. At the same time, the term of CAS’s contract to provide government services, including the PES schedule, was due to expire. In March 2010, the GSA’s Office of the Inspector General (OIG) notified CAS in writing that, while it was considering extending the term of the service contract, the OIG would first exercise its contractual right to audit the “pricing policies and practices” reflected in the PES schedule, and that a change to the PES schedule rates might result.
*506 The parties executed a stock purchase agreement on August 7, 2010. Under the agreement, EDO and CAS submitted a “Company Disclosure Schedule” that they represented and warranted to Wyle set forth, among other things, each government contract to which CAS was a party that the company knew was being audited by a governmental authority. Although the OIG’s audit of the PES schedule was still under way when the agreement was executed, EDO and CAS omitted any mention of that audit on the Company Disclosure Schedule.
In March 2011, the OIG completed its audit, and as a result, GSA reduced many of the rates that CAS could charge under the PES schedule. In April 2011, Wyle demanded compensation for CAS’s reduced profitability under article VIII of the agreement, which is headed, “SURVIVAL OF REPRESENTATIONS AND WARRANTIES; INDEMNIFICATION.” Article VIII states that Wyle is entitled to “indemnification” for “Losses” arising from the selling parties’ breach of their representations and warranties. Plaintiffs claim that, if they had known about the OIG audit, Wyle would have paid less for CAS because the GSA’s audit of a government contractor’s schedule “inevitably leads to reductions, often substantial reductions, in the rates a contractor can charge for future government work.” Although Wyle informally sought indemnification from defendants in April 2011, it did not put its demand in writing until it sent two letters in June and September 2011. In December 2011, after defendants refused to compensate Wyle, plaintiffs commenced this action asserting a single claim for breach of contract.
The motion court granted defendants’ motion to dismiss on the ground that Wyle waited until some months after OIG had issued the audit before sending the letters. Wyle’s delay, the court found, breached its contractual obligation under article VIII to promptly notify defendants of its indemnification claim in writing. According to the court, the OIG audit constituted a “Third Party Claim,” defined as a “claim, action, suit, proceeding or demand” brought by a person who is not a party to the agreement against CAS’s buyer or seller. The agreement precludes indemnification of a third-party claim if the prospective indemnitee failed to promptly notify the indemnitor of the claim in writing and the late notice materially prejudiced the indemnitee. Further, under the agreement, prejudice is presumed if the third-party claim is settled before the indemnitee was notified. The motion court found that defendants were prejudiced by Wyle’s late notice because it deprived them of the opportunity to negotiate with GAS about the OIG audit findings and the new PES schedule rates.
*507 Without reaching the issue whether the OIG audit constitutes a third-party claim within the meaning of the agreement, we find that the complaint states a breach of contract because article VIII excuses late notice by providing that “no limitation or condition of liability provided for in this Article VIII shall apply in the event of . . . intentional misrepresentation.” The factual allegations set forth in the complaint effectively claim that defendants deliberately kept Wyle from learning about the audit before the sale, which constitutes intentional misrepresentation. Plaintiffs assert that, eight days before the agreement was executed, CAS’s head of finance alerted a lawyer who was assembling the agreement’s disclosure schedules for defendants that the current draft did not reference the OIG audit but needed to do so. The CAS officer also sent the lawyer a proposed schedule that included the audit. According to plaintiffs, the CAS officer’s concerns were ignored. Plaintiffs also submitted documentary evidence of the exchange between the CAS officer and the lawyer. Concur — Gonzalez, RJ., Friedman, Renwick, Freedman and Richter, JJ.